Hinkson *v.* Great Atlantic & Pacific Tea Company, Appellant.

Argued November 21, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*E. LeRoy van Roden,* for appellant.

*Theodore C. Jenkins, Jr.,* for appellee.

OPINION BY STADTFELD, J., December 20, 1938:

This is an appeal by defendant from the judgment on a verdict in favor of plaintiff in an action of assumpsit by Bessie Ward Hinkson against The Great Atlantic and Pacific Tea Company. Motions for a new trial and for judgment non obstante veredicto were overruled. This appeal followed.

In 1930, Bessie Ward Hinkson, the plaintiff in the court below, built a new store property in Marcus Hook, Delaware County, Pennsylvania. This was done pursuant to certain negotiations between the plaintiff and The Great Atlantic and Pacific Tea Company, the defendant below and appellant herein. This store was built by the plaintiff, to suit the peculiar requirements of the latter, and the building was in accordance with plans and specifications submitted and approved by the defendant.

Upon completion of the store building, the defendant entered into possession on August 1, 1930, pursuant to the terms of a written lease for a period of four years from that date, with renewal privileges. At the expiration of the first term of four years, the parties entered into a second lease for the same premises for a term of three years beginning August 1, 1934, and the defendant remained in possession thereunder until the expiration of that term.

By the terms of the second lease, it was agreed between the parties that the first lease was to be null and void and of no effect whatsoever from and after the 31st day of July, 1934.

Both leases were on identical forms furnished by the defendant, and both provided, inter alia, as follows: "And the lessee hereby covenants and agrees with the lessor as follows: ...... 2. That it will make all necessary incidental repairs to the interior of the demised premises except the interior repairs, if any, agreed to be made by the lessor in lines 59 and 60 of this lease. All other repairs the lessor hereby covenants and agrees to make, and it is expressly understood and agreed that

should the lessor neglect or refuse to make any such repairs within a reasonable time after notice that the same are needed, the lessee, without liability of forfeiture of its terms hereby demised, may have such repairs made and may deduct from the rent payable by it, the cost thereof."

The repairs excepted in lines 59 and 60 referred to, were covered by the covenant of the lessor as follows: "5. That he will have done at his expense, but to the lessee's reasonable satisfaction, prior to the date of the beginning of the term of this lease, any renovating or repairing which may be required to make the leased premises thoroughly sanitary and to put them in first class tenantable condition."

The lessee further covenanted as follows: "4. That, at the expiration of the said term, it will quit and surrender the premises hereby demised in as good state and condition as received, reasonable wear and tear and damage by fire or the elements, or from other causes beyond its control, excepted."

The defendant was in sole and continuous possession of the demised premises from the time the store was built until it vacated on July 31, 1937.

Plaintiff appellee claimed that the building, when vacated, was in a greatly damaged condition. The damage complained of was to the walls of the interior of the store and to the floor and its supports in the rear of the building.

The verdict of the jury having been in favor of the plaintiff, all disputed facts and the reasonable inferences therefrom must be resolved in favor of the plaintiff in determining the disposition of this appeal: *Iaquinto v. Notarfrancesco,* 129 Pa. Superior Ct. 121, 195 A. 169.

According to the testimony on behalf of plaintiff appellee, the damage to the walls was caused by the removal of shelving. The side walls and the rear wall of the store were marred by holes in the plaster where

nails had been drawn to remove shelves. These holes were on all three walls. On the left side wall, were scars two feet high in places, and all walls were scarred two or three feet in height from the floor. In order to repair this damage, it was necessary to tear off the furring strips in places and to restore the plaster base.

The damage to the flooring and its supports was confined to the rear portion of the building, particularly the rear twenty feet. The floor was level and in good condition at the time the defendant entered under the second lease on August 1, 1934, but was in a greatly damaged condition when it vacated the premises on July 31, 1937. The flooring, itself, was black, curled and warped; and was pulled away from the cement floor of a lavatory in the rear of the store. The floor was uneven, wavy and sagged at least eight inches in some parts. It was pulled away from the supporting joists twenty inches at points where the floor sagged. A large number of holes at least one-half inch in diameter had been bored through the floor by the employees of the defendant to permit water to escape below. Three hundred square feet of new flooring were required to remedy this condition.

The floor of the store was supported from beneath by two stringers or girders. These were of lumber 6x8 inches, and ran parallel with the side walls, from the front to the rear of the building. One of these ran through the center of the store and the other was attached to the party wall of the adjoining building. Across these girders, joists were laid, and the floor boards were nailed to the joists. After the defendant vacated the property, it was discovered that both girders were broken at the rear of the building. The center girder was entirely rotted, while the side girder was rotted for a distance of thirty feet measured from the rear of the store. The joists at the rear of the building were rotted all the way through, and were broken. This condition began to develop approximately one year prior

to the end of the second term, and had developed to the stage above described at the time the defendant vacated the premises. Two new girders and twenty-four new joists were necessary to replace those that were broken and rotted.

The defendant maintained and conducted a grocery store in the demised premises and sold, among other things, vegetables. Some vegetables were displayed for sale in the front part of the store, while the surplus was stored at the rear. The only available running water was at the rear of the store, and it was there that vegetables were watered and permitted to drain on the floor. Some vegetables, in baskets and packed with ice, were also permitted by the defendant to remain on the floor at the rear of the store and drain.

The defendant's own witnesses admitted that the damage to the walls of the store property was caused by the removal of shelves at the expiration of the second lease in 1937; that the holes in the floor had been made by their own employees; and that the floor and its supporting joists and girders at the rear of the building did not begin to warp and sag until about one year prior to the termination of the second lease.

Upon refusal of defendant appellant, after notice to make the necessary repairs to remedy the conditions stated, appellee had the same made at an expense of $300 which was the reasonable price therefor.

The only issue involved was whether the appellant surrendered the premises at the expiration of the term "in as good state and condition as received, reasonable wear and tear and damages by fire or the elements, or from other causes beyond its control, excepted." This was clearly a question of fact for the jury. The case was submitted to the jury in a fair and comprehensive charge.

The testimony supports the verdict and we find nothing which would warrant a reversal of the judgment.

Judgment affirmed.